IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ALBERT S. SMYTH CO., INC., ET AL.,<br><br>*Plaintiffs/Counter-Defendants*<br><br>v.<br><br>MARK A. MOTES, ET AL.,<br><br>*Defendant/Counter-Plaintiff* | Case No. 1:17-CV-00677-CCB |

**CERTIFICATE REGARDING COUNSEL'S SINCERE ATTEMPTS
TO CONDUCT L.R. 104.7 CONFERENCE OF COUNSEL**

I, Michelle J. Dickinson, Esquire, counsel for Counter-Plaintiff Mark Motes, hereby certify that I have made numerous sincere and good faith attempts to confer with counsel for Plaintiffs/Counter-Defendants Smyth Ellicott City, LLC and Smyth Annapolis, LLC (collectively, "Smyth"), Steve Fedder, regarding the discovery disputes identified in the attached Motion to Compel and Reply and to resolve the differences between the parties. Mr. Fedder has been largely evasive, uncooperative, and unprofessional such that we have been unable to resolve our clients' differences. In support thereof, I submit the following:

1. On October 19, 2018, I served Mr. Fedder via email and regular mail with document requests and interrogatories related to Mr. Motes' Counterclaims. True and correct copies of the discovery requests are attached as Exhibit A-D.

2. On October 29, 2018, Mr. Fedder and I engaged in a lengthy call wherein we identified Smyth email custodians and discussed search queries I had crafted using standard Dtsearch syntax. Mr. Fedder offered limited input regarding the search queries but agreed to collect and run the queries on 13 email custodians and provide hit counts so that we could determine whether any searches needed to be refined - to

ensure that our respective review responsibilities were manageable and reasonable. Mr. Fedder did not thereafter provide hit counts, leading me to believe the volume of documents to be reviewed was small.

3. Smyth's responses to Mr. Motes' discovery requests were due on November 21, 2018.

4. By email on November 16, 2018, Mr. Fedder advised that Smyth would not be producing written responses or documents until five days after the due date, November 26, 2018. *See* Exh. E.

5. Smyth, however, did not produce anything on November 26, 2018.

6. By email on December 3, 2018, I inquired as to the status of Smyth's discovery responses. Mr. Fedder responded that he was obtaining signatures and working on the document production. Mr. Fedder further indicated that the production required going through "lots of ESI" but that it would "be done this week." *See id*.

7. By email on December 7, 2018, in response to my inquiry four days earlier, Mr. Fedder disclosed that he had not even begun reviewing electronic documents yet. In fact, Smyth's ESI vendor had not yet run the search queries we had agreed upon over a month before. *See id*.

8. On December 10, 2018, Smyth produced written discovery responses but no documents. True and correct copies of the discovery responses are attached as Exhibits F-I. Mr. Fedder instead proposed dispensing with producing emails or in the alternative that Mr. Motes pay the entire cost of electronic discovery at a highly-inflated cost estimate. *See* Exhibit J.

9. On December 11, 2018, I indicated my disagreement with Smyth's proposal, as Smyth's defense to Mr. Motes' counterclaims rests on an alleged oral consolidation agreement and Smyth's alleged overpayment of distributions to Mr. Motes, which if

true would be reflected, referenced or otherwise memorialized in email correspondence between the parties, their accountants, or others. I pointed out that it is also fair to assume that there exist emails referencing distribution payments made to Mr. Motes and evidencing the parties' knowledge and approval of these payments. I further pointed out that the document requests more specifically detail other material issues which likely would be addressed in emails between the parties. Further, the custodians Smyth had agreed to search included Smyth members, officers and employees who have personal knowledge of and would be expected to have corresponded regarding the material issues in the case. As Smyth wiped Mr. Motes' emails upon his termination, only Smyth has access to and the ability to search his emails. Accordingly, I requested that Smyth produce responsive electronic documents, including emails. I further requested a telephonic discovery conference. Mr. Fedder did not respond. *See id*.

10. By email on December 17, 2018, I renewed my request for a discovery conference. Mr. Fedder did not respond. *See id*.

11. On January 4, 2018, Smyth produced a total of 172 documents. Of those documents, only one was a scanned email. Mr. Fedder advised that while he had finally run the search queries agreed upon over two months earlier, he had opted not to review them for production because the hit counts were too high. In response, I again requested a discovery conference. *See* Exh. K.

12. On January 7, 2019, Mr. Fedder and I and our respective ESI vendors participated in a telephone discovery conference regarding the October search queries. During the call, we learned that the high hit counts were caused in large part by Smyth's ESI vendor incorrectly converting the Dtsearch syntax queries to Lucene syntax employed by the older search engine Smyth had chosen to use. I agreed to convert the queries

to Lucene syntax and narrow certain of the queries, which I completed and provided that same day. Although Mr. Fedder's ESI vendor agreed to run the corrected searches and provide hit counts the same day, he did not.

13. On January 9, 2019, all counsel engaged in an extensive telephonic discovery conference during which Mr. Fedder and I discussed certain perceived deficiencies in our clients' respective discovery responses. As agreed, I followed up with a letter detailing Smyth's discovery deficiencies and agreements to supplement on January 11, 2019. *See* Exh. L.

14. That same day, upon my inquiry as to the status of the email search queries, Mr. Fedder provided new individual hit counts with a total of 12,729 emails. In an effort to further reduce the number of irrelevant emails, I proposed removing and/or revising certain queries. *See* Exh. M.

15. Mr. Fedder responded that Smyth should not have to pay for the additional search. I promptly called Mr. Fedder who was unavailable. I then followed up with an email requesting a call to discuss. *See id.*

16. By email that same day, Mr. Fedder questioned the authority for requiring Smyth to perform multiple searches of ESI. In response, I reminded Mr. Fedder that the purpose of refining the searches is to reduce the number of documents Smyth would have to review for responsiveness and privilege, which would save them time and money and that the first revision was occasioned by Smyth's vendor's mistakes. Further, with respect to the cost, tweaking queries takes minimal time and costs very little. *See id.*

17. On January 17, 2019, I again inquired as to the status of the search queries. *See id*. Mr. Fedder did not respond.

18. On January 18, 2019, I called Mr. Fedder's office and followed up with an email

seeking to discuss the outstanding discovery issues. *See id*. Mr. Fedder did not respond.

19. On January 24, 2019, I again called Mr. Fedder's office and followed up with an email inquiring about the status of Smyth's discovery responses (e.g., supplemental written responses, email search term hits and production of accounting files in the proper format). I advised Mr. Fedder that since he was ignoring my repeated emails and calls, I would be filing a motion to compel seeking costs. *See* Exh. N. Mr. Fedder did not respond.

20. On January 25, 2019, I served Mr. Fedder with a motion to compel and offered to discuss. *See* Exh. O.

21. By email on January 30, 2019, Mr. Fedder advised that the revised search queries still produced a high volume of emails. Upon reviewing the hit counts, I determined that Smyth's e-discovery vendor had again improperly run the searches. I requested that they correct the queries and provide de-duplicated hit counts. *See* Exh. P.

22. On January 31, 2019, Smyth provided a revised hit count but without a total of de-duped hits such that it was impossible to determine how many were unique emails. *See id*.

23. On February 4, 2019, at my request, Smyth advised that there were 5,203 unique emails. In response that same day, I asked Mr. Fedder whether he would prefer to work with me to further narrow the queries or move forward with his review and production. *See id*.

24. On February 5, 2019, Mr. Fedder indicated that he did not know how he could help me narrow *my* requests. I clarified that I was again seeking his assistance in narrowing the search queries based on his familiarity with the documents and his clients' knowledge of the vernacular they commonly used. *See id*. Mr. Fedder did

5

not respond.

25. Accordingly, on February 7, 2019, I advised Mr. Fedder that since he did not respond, I was assuming he planned to review the entire set of emails, rather than working with me to narrow the search queries and further asked for an anticipated production date. *See* Exh. Q.  Mr. Fedder did not respond.

26. On February 12, 2019, I requested that Mr. Fedder participate in a telephonic discovery conference to discuss the issues raised in the motion to compel, served over two weeks earlier and to which Smyth had failed to respond.  *See* Exh. R.  Mr. Fedder did not respond.

27. On February 22, 2019, Smyth served a response to Mr. Motes' motion to compel, *albeit* almost two weeks after the due date.  *See* Exh. S.

28. On March 1, 2019, I promptly served a reply on behalf of Mr. Motes.  *See* Exh. T.

29. On March 4, 2019, in response to my inquiry regarding the status of Smyth's email production, Mr. Fedder advised that his email search uncovered no responsive documents other than emails between counsel and the board transmitting filings.  *See* Exh. U.

30. On March 5, 2019, surprised that not one of the 5,203 emails was responsive, I requested that Mr. Fedder confirm that he reviewed each of the emails and found no responsive documents concerning 10 categories covered by the discovery requests. *See id*.  Mr. Fedder did not respond.

31. On March 6, 2019, I requested a call with Mr. Fedder specifically regarding the "outstanding discovery issues identified in Mr. Motes' reply to Smyth's response to motion to compel."  *See* Exh. V.

32. On March 7, 2019, in confirming a call with Mr. Fedder for March 11, 2019, I requested that Mr. Fedder respond to my March 5th email confirming he had reviewed

all of the emails. *See id.* Mr. Fedder did not respond.

33. On March 11, 2019, I participated in a telephonic discovery conference with Mr. Fedder. Mr. Fedder was unprepared to discuss Smyth's discovery deficiencies, but instead wanted to discuss Smyth's yet-to-be-fully-briefed motion to compel. Mr. Fedder suggested we continue our call a few hours later after he had a chance to review Mr. Motes' motion to compel. When I asked if he would at least confirm that he had reviewed all 5,203 emails, Mr. Fedder yelled and ultimately indicated that he had reviewed "certain," but not all of the emails after conducting his own "targeted searches." Mr. Fedder then acknowledged that he did see, but did not produce, certain responsive emails. When asked to set up a call later in the day – as he had originally suggested – Mr. Fedder abruptly hung up. *See* Exh. W.

34. By email that same day, I offered to have another discovery conference on Friday. *See* Exh. X. Mr. Fedder did not respond.

35. By email on March 12, 2019, I again requested that Mr. Fedder advise as to his availability for a discovery conference on Friday. Mr. Fedder responded that he had been "redoing some of [his] searches" and found 35 responsive emails. He agreed to a discovery conference on Friday provided we discuss his not-fully-briefed motion to compel as well. In response, I agreed to the call and suggested 11am. Mr. Fedder responded to the email but did not confirm the discovery conference. *See id.*

36. That same day, I again requested that Mr. Fedder confirm the discovery conference for 11am on Friday. *See id.* Mr. Fedder did not respond.

37. On March 13, 2019, I again asked Mr. Fedder if 11am on Friday worked for a discovery conference. Mr. Fedder responded that he did not know yet, indicating that he wanted to finish briefing his motion to compel and produce additional documents first. *See id.*

7

38. I have received no further communication from Mr. Fedder regarding the discovery conference.

39. The outstanding issues requiring resolution by the Court, as further detailed in the Reply attached as Exhibit T, are as follows:

   a. Smyth has failed to identify for each payment made by Smyth to Mark Motes between January 1, 2008 and the present, the method of payment, person(s) who approved the payment, person who signed the check or reason for the payment or, alternatively, to produce documents evidencing the same. (Interrogatory No. 4)

   b. Smyth has failed to identify the parties who agreed to the alleged modifications/amendments to the Operating Agreements. (Interrogatory No. 7)

   c. Smyth has failed to identify the parties who agreed to the alleged modifications/amendments to the Employment Agreement. (Interrogatory No. 11)

   d. Smyth has failed to identify the parties who allegedly agreed to modify the method of calculating Mr. Motes' ownership interest in or annual cashflow distributions. (Interrogatory No. 12)

   e. Smyth has refused to identify a single communication between Smyth and any person concerning any proposed or agreed upon modification of the method of calculating Mr. Motes' ownership interest in and/or annual cash flow distributions. (Interrogatory No. 13)

   f. Smyth has refused to identify a single communication between Smyth and any person concerning annual cash flow distributions due and/or paid to Mark Motes. (Interrogatory No. 14)

   g. Smyth refers to the financial statements produced in discovery as explaining in detail the methodology used for calculating the member interests and distributions

for the Smyth entities each year; however, the financial statements do not contain any explanation of the methodology used by Smyth. (Interrogatory No. 15)

h. Smyth has failed to identify for each equity or cash flow distribution payment made to or for the benefit of any Smyth entity member the method of payment, person who approved the payment, or person who signed the check. (Interrogatory No. 16)

i. While Smyth now has produced a handful of email communications concerning Smyth's buy-out of Mr. Motes' member interests in Smyth Ellicott City or Smyth Annapolis, upon information and belief, Smyth has not identified and described in detail each and every such communication. (Interrogatory No. 17)

j. Smyth has failed to explain its contention in paragraph 80 of its Answer to the Counterclaims that it provided Mr. Motes with a *complete and timely* accounting for the taxable year 2016, including the date provided, by whom, and the documents or information provided. (Interrogatory No. 18)

k. Despite the parties' agreement, Smyth has not conducted the requisite review of all potentially responsive emails.

l. Smyth claims not to have any non-privileged documents related to communications regarding the allegations in the Counterclaims, Answer, or Smyth's defenses; however, Smyth has not reviewed all of the potentially responsive emails. (Document Request No. 3)

m. Smyth has failed to produce emails or other documents reflecting calculations made to determine the distributions due or paid to each member of the Smyth entities since January 1, 2008. (Document Request No. 11)

n. Smyth has failed to produce 2008-2012 tax returns or work papers for any year (2008 to present). (Document Request No. 14)

o.  Smyth has now produced only a handful of emails related to settlement negotiations with Mr. Motes and has not produced the many versions of the draft severance or settlement agreements.  (Document Request No. 22)

p.  Smyth has not produced the monthly financial statements for the Smyth entities provided to the board and/or members for taxable years 2012 through 2016, despite those statements having been emailed to board members.  (Document Request No. 23)

q.  Smyth has not produced copies of checks, which evidence loans from Mr. Motes to Smyth being made and/or repaid. (Document Request No. 24)

                      Respectfully submitted,

                      _____/s/_____
                      Michelle J. Dickinson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March, 2019, a copy of the foregoing Certificate Regarding Counsel's Sincere Attempts To Conduct L.R. 104.7 Conference of Counsel was served upon the following counsel of record via email:

Steven K. Fedder (USDC MD No. 000873)
Julie C. Janofsky (USDC MD No. 002622)
2650 Quarry Lake Drive – Suite 100
Baltimore, MD 21209
410.415.0080
sfedder@mdcounsel.com

*Counsel for Plaintiffs and Plaintiffs/Counter-Defendants*

Patrick Buckler (USDC MD No. 25943)
Womble Bond Dickinson (US), LLP
100 Light Street, 26th Floor
Baltimore, Maryland 21202
410.545.5826
Patrick.Buckler@wbd-us.com

*Counsel for John Jackson III*

                                                     /s/
                                       Michelle J. Dickinson